**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ERIN WILSON, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ESURANCE INSURANCE SERVICES, INC.,<br><br>Defendant. | Civil Action File No.:<br>1:26-cv-04428-ELR |

**MEMORANDUM IN SUPPORT OF DEFENDANT ESURANCE INSURANCE SERVICES, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**


KILPATRICK TOWNSEND
& STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528
Phone: (404) 815-6500
Fax: (404) 815-6555

Jeffrey H. Fisher
GA Bar No. 981575
Jennifer L. Cotton
GA Bar No. 520708
jfisher@ktslaw.com
jcotton@ktslaw.com

*Counsel for Defendant Esurance Insurance Services, Inc.*

## TABLE OF CONTENTS


INTRODUCTION .......... 1

BACKGROUND .......... 2

LEGAL STANDARD .......... 5

ARGUMENT .......... 6

I. Plaintiff fails to plausibly allege that Esurance made or is liable for the calls at issue .......... 6

A. Plaintiff does not allege that Esurance directly placed any of the calls. .......... 7

B. Plaintiff pleads no facts supporting vicarious liability .......... 9

II. Plaintiff fails to state a TCPA claim because a cellular telephone subscriber is not a "residential telephone subscriber." .......... 11

A. Post-*McLaughlin* and *Loper Bright*, courts must independently interpret the TCPA without deference to the FCC. .......... 12

B. The TCPA's text distinguishes "residential" from "cellular" subscribers. .......... 13

C. Plaintiff's conclusory allegations cannot overcome the statute's plain text .......... 18

III. Plaintiff alleges at most one telephone solicitation, which does not satisfy the statutory threshold. .......... 19

CONCLUSION .......... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anthony v. Brian Mktg. Grp.*,
No. 24-80800-CIV, 2026 WL 2685650 (S.D. Fla. Sept. 11, 2026) ....................14, 15, 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................5, 6

*Belleville v. Fla. Ins. Servs., Inc.*,
No. 23-14369, 2024 WL 2342337 (S.D. Fla. May 23, 2024) ....................9

*Bryant v. Avado Brands, Inc.*,
187 F.3d 1271 (11th Cir. 1999) ....................3

*Carter v. DeKalb County*,
521 F. App’x 725 (11th Cir. 2013)....................19

*Conrad v. Hart Consumer Prods.*,
No. 4:24-CV-307-CLM, 2026 WL 2741623 (N.D. Ala. Sept. 16, 2026)....................14

*Cunningham v. Lines*,
No. 1:16-cv-24890, 2016 WL 7494871 (S.D. Fla. Dec. 28, 2016) ....................14, 17

*Franza v. Royal Caribbean Cruises, Ltd.*,
772 F.3d 1225 (11th Cir. 2014) ....................9

*Gaker v. Q3M Ins. Sols.*,
No. 3:22-CV-00296-RJC-DSC, 2023 WL 2472649 (W.D.N.C. Feb. 8, 2023) ....................14

*Gayle v. Bill Holt Auto., Inc.*,
No. 1:22-CV-03184-ELR, 2023 WL 6192733 (N.D. Ga. July 10, 2023) ....................*passim*

*Hirsch v. Ensurety Ventures, LLC*,
805 F. App'x 987 (11th Cir. 2020) ........................................................ 10

*Hogsett v. Parkwood Nursing & Rehab. Ctr., Inc.*,
997 F. Supp. 2d 1318 (N.D. Ga. 2014) ........................................................ 10

*Isaacs v. USHealth Advisors, LLC*,
No. 3:24-cv-00216-LMM, 2025 WL 2268359 (N.D. Ga. Aug. 7, 2025) ........................................................ 17, 18

*In re Joint Pet. Filed by Dish Network, LLC*,
28 FCC Rcd. 6574 (2013) ........................................................ 7

*K Mart Corp. v. Cartier, Inc.*,
486 U.S. 281 (1988) ........................................................ 16

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ........................................................ 12, 13

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
606 U.S. 146 (2025) ........................................................ *passim*

*M.H. ex rel. C.H. v. Omegle.com LLC*,
122 F.4th 1266 (11th Cir. 2024) ........................................................ 18

*Moore v. Triumph CSR Acquisition, LLC*,
No. 23-CV-4659, 2023 WL 8601528 (N.D. Ill. Dec. 12, 2023) ........................ 14

*Morris v. Lincare, Inc.*,
No. 6:22-cv-1416, 2023 WL 5336780 (M.D. Fla. Aug. 18, 2023) ........................................................ 14, 17, 19

*Osorio v. State Farm Bank, F.S.B.*,
746 F.3d 1242 (11th Cir. 2014) ........................................................ 14, 17

*Pub. Serv. Tel. Co. v. Ga. Pub. Serv. Comm'n*,
755 F. Supp. 2d 1263 (N.D. Ga. 2010) ........................................................ 16

*Radvansky v. Bubolo Med., LLC*,
No. 1:25-cv-03168, 2025 WL 3306417 (N.D. Ga. Aug. 15, 2025) ................... 18

*In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014 (2003) .......... 13

*Russello v. United States*, 464 U.S. 16 (1983) .......... 16

*Schulz v. Infogroup, Inc.*, No. 3:19-CV-1620-N, 2020 WL 4201636 (N.D. Tex. July 21, 2020) .......... 20

*Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560 (2012) .......... 14

*Tuso v. Lennar Corp.*, No. 23-CV-22264, 2024 WL 1239474 (S.D. Fla. Mar. 22, 2024) .......... 9, 10

*United States v. Chinchilla*, 987 F.3d 1303 (11th Cir. 2021) .......... 15

*Wilson v. 360 Lending Corp.*, No. 1:25-CV-07121-MHC (N.D. Ga.) .......... 2

*Wilson v. Amerisave Mortg. Corp.*, No. 1:25-CV-06218-ELR (N.D. Ga.) .......... 2

*Wilson v. CookUnity, LLC*, No. 1:25-CV-03237-TRJ (N.D. Ga.) .......... 2

*Wilson v. Leadpoint, Inc.*, No. 1:25-CV-06200-MHC (N.D. Ga.) .......... 2

*Wilson v. Perpay, Inc.*, No. 1:25-CV-04588-SDG (N.D. Ga.) .......... 2

*Wilson v. QuikAid, Inc.*, No. 1:25-CV-03238-TWT (N.D. Ga.) .......... 2

*Wilson v. Real Health Roots, LLC*, No. 1:25-CV-03808-SEG (N.D. Ga.) .......... 2

*Wilson v. Royal United Mortg. LLC*, No. 1:25-CV-06150-TWT (N.D. Ga.) .......... 2

*Wilson v. SPF Screens & Awnings LLC*,
No. 1:25-CV-06575-MLB (N.D. Ga.) .......... 2

*Wilson v. Tradercodes, LLC*,
No. 1:25-CV-03211-ELR (N.D. Ga.) .......... 2

*Wilson v. Vande Ayurwell, LLC*,
No. 1:25-CV-06219-MLB (N.D. Ga.) .......... 2

*Wilson v. Wise Up Fin. LLC*,
No. 1:26-CV-00616-JPB (N.D. Ga.) .......... 2

**Statutes**

47 U.S.C. § 227 .......... *passim*

O.C.G.A. § 10-6-1 .......... 10

O.C.G.A. § 46-5-27 .......... *passim*

**Rules & Regulations**

47 C.F.R. § 64.1200 .......... 11, 12, 13

Fed. R. Civ. P. 12(b)(6) .......... 5

**Other Authorities**

Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* (2012) .......... 15

## INTRODUCTION

Serial Plaintiff Erin Wilson asserts claims under the Telephone Consumer Protection Act ("TCPA") and Georgia's Telephone Solicitations Act ("GTSA") against Defendant Esurance Insurance Services, Inc. ("Esurance") based on three calls she allegedly received on her cellular telephone in July 2026. Plaintiff's claims fail for three independent reasons.

First, based on Plaintiff's allegations and judicially noticeable facts, it is implausible that the alleged calls came from Esurance—an Allstate brand that has not independently marketed insurance services in approximately six years. Rather, Plaintiff's allegations—including a caller who used the wrong name and claimed to be calling "on behalf of" Esurance—describe the hallmarks of an unauthorized third-party telemarketing operation with outdated or incorrect information. Plaintiff's allegations do not support a reasonable inference that Esurance, which has not marketed insurance since 2020, made or is vicariously liable for the alleged calls under either the TCPA or the GTSA.

Second, Plaintiff alleges that she received these calls on her cellular phone—not a residential landline. But section 227(c)(5) of the TCPA provides a private right of action only to a person who receives calls in violation of regulations protecting "residential telephone subscribers." The text of section 227(c) applies only to residential landline subscribers, and the Eleventh Circuit has explained that

"residential telephone" lines are not the same as "cellular telephone" service under the TCPA. This Court should follow the growing line of cases—both in and out of this circuit—holding that the TCPA does not provide a private right of action under section 227(c) to cellular telephone users.

Third, Plaintiff alleges, at most, only one "telephone solicitation" because two out of the three calls were abandoned. Plaintiff's after-the-fact callbacks to those two numbers do not convert the earlier abandoned calls into telephone solicitations that never existed. Thus, neither the TCPA nor the GTSA proscribes Esurance's alleged conduct.

The Court should dismiss the Complaint with prejudice.

## BACKGROUND

Plaintiff is a serial TCPA litigant who has filed over a dozen TCPA cases in this district alone since June 2025.[1] Esurance is an Allstate brand that has not

[1] *See Wilson v. Tradercodes, LLC*, No. 1:25-CV-03211-ELR, Dkt. 33 (N.D. Ga., Mar. 17, 2026) (granting defendant's motion for judgment on the pleadings against Plaintiff because the TCPA does not apply to text messages); *Wilson v. CookUnity, LLC*, No. 1:25-CV-03237-TRJ (N.D. Ga. filed June 9, 2025); *Wilson v. QuikAid, Inc.*, No. 1:25-CV-03238-TWT (N.D. Ga. filed June 9, 2025); *Wilson v. Real Health Roots, LLC*, No. 1:25-CV-03808-SEG (N.D. Ga. filed July 9, 2025); *Wilson v. Perpay, Inc.*, No. 1:25-CV-04588-SDG (N.D. Ga. filed Aug. 14, 2025); *Wilson v. Royal United Mortg. LLC*, No. 1:25-CV-06150-TWT (N.D. Ga. filed Oct. 28, 2025); *Wilson v. Leadpoint, Inc.*, No. 1:25-CV-06200-MHC (N.D. Ga. filed Oct. 29, 2025); *Wilson v. Amerisave Mortg. Corp.*, No. 1:25-CV-06218-ELR (N.D. Ga. filed Oct. 30, 2025); *Wilson v. Vande Ayurwell, LLC*, No. 1:25-CV-06219-MLB (N.D. Ga. filed Oct. 30, 2025); *Wilson v. SPF Screens & Awnings LLC*, No. 1:25-CV-06575-MLB (N.D. Ga. filed Nov. 15, 2025); *Wilson v. 360 Lending Corp.*, No.

independently marketed insurance since 2020. *See* The Allstate Corporation, 2019 Form 10-K (attached as **Exhibit A**).[2]

Plaintiff filed this putative class action on August 5, 2026, alleging that Esurance violated the TCPA and GTSA. Doc. 1 ¶¶ 1–6. She purports to represent a nationwide TCPA Do-Not-Call class and a Georgia subclass. *Id.* ¶ 60.

Plaintiff alleges that she is a Georgia resident and the regular and sole user of a cellular telephone number with a "(404)" area code. *Id.* ¶¶ 7, 21, 56. Plaintiff describes her cell phone as "personal" and "residential," but she also alleges that she does not have a landline, has no other telephone number for personal use, and maintains the number through a personal T-Mobile cellular plan. *Id.* ¶¶ 22–26. Plaintiff alleges that she registered the number on the National Do-Not-Call Registry on June 19, 2024, and that she received three incoming calls in July 2026. *Id.* ¶¶ 27–28.

First, Plaintiff alleges she received a call on July 23, 2026, from (470) 995-2211; she answered and repeatedly said "hello," but no one responded; and the call disconnected. *Id.* ¶¶ 29–30.

---

1:25-CV-07121-MHC (N.D. Ga. filed Dec. 15, 2025); *Wilson v. Wise Up Fin. LLC*, No. 1:26-CV-00616-JPB (N.D. Ga. filed Feb. 2, 2026).

[2] The Court may take judicial notice of Allstate's publicly filed SEC disclosures. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).

Second, Plaintiff alleges she received a call the next day, on July 24, 2026, from a different number—(470) 826-0674. *Id.* ¶ 31. The caller immediately asked for "Ninapulin" and allegedly said she was calling "on behalf of" Esurance to market or advertise Esurance automobile insurance policies. *Id.* ¶ 32. Plaintiff responded by stating she was not Ninapulin and instructing the caller not to call again. *Id.* ¶¶ 33–34.

Third, Plaintiff alleges she received a call on July 27, 2026, from a different number—(470) 762-3181; she answered and repeatedly said "hello"; no one responded; and the call disconnected. *Id.* ¶¶ 35–38.

That same day, July 27, 2026, Plaintiff returned the two abandoned calls. *Id.* ¶¶ 39–54. When Plaintiff called (470) 762-3181, the person who answered asked whether Plaintiff was "Ninapulin," said he was "calling on behalf of Esurance," and "began promoting Esurance automobile insurance products." *Id.* ¶¶ 39–42. Plaintiff alleges she "asked whether the call placed . . . earlier" from that number was "made to advertise Esurance insurance products," and "[t]he representative confirmed that the earlier call had been made for that purpose." *Id.* ¶¶ 43–44. Plaintiff then returned the call to (470) 995-2211. Plaintiff alleges the person who answered asked "whether Plaintiff was 'Ninapulin'" and said "the earlier call had been placed on behalf of Esurance to advertise Esurance automobile insurance products." *Id.* ¶¶ 47–54.

Plaintiff alleges these calls "qualified as telemarketing" and violated the TCPA and GTSA. *Id.* ¶¶ 55–58. In Count I, Plaintiff claims Esurance violated 47 U.S.C. § 227 because "Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf" made "telemarketing calls," despite Plaintiff's number "being on the National Do Not Call Registry," and seeks corresponding injunctive relief. *Id.* ¶¶ 66–70. In Count II, Plaintiff claims Esurance violated O.C.G.A. § 46-5-27 for the same reasons. *Id.* ¶¶ 71–75.

Plaintiff's proposed TCPA class includes persons nationwide whose "residential telephone numbers were on the National Do Not Call Registry" and who "received more than one telemarketing call from or on behalf of" Esurance within a 12-month period. *Id.* ¶ 60. Plaintiff's proposed GTSA subclass includes Georgia persons "whose telephone numbers were on the National and/or the Georgia Do Not Call List" and who "received one or more telemarketing calls from or on behalf of" Esurance within a 12-month period. *Id.*

## LEGAL STANDARD

Under Rule 12(b)(6), a district court should dismiss an action when the plaintiff fails to plead sufficient factual allegations "to raise [his] right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Although a court should assume the

truth of factual allegations, it need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Claims have "facial plausibility" only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A federal claimant must "nudge [her] claims . . . across the line from conceivable to plausible." *Id.* at 680 (quoting *Twombly*, 550 U.S. at 570).

## ARGUMENT

Plaintiff's claims fail for three reasons. First, the Complaint does not plausibly allege that Esurance made or is liable for the calls; the allegations and judicially noticeable facts instead point to an unauthorized third-party operation. Second, Plaintiff received the calls on a cellular telephone, not as a "residential telephone subscriber" protected by the TCPA. Third, Plaintiff alleges at most one telephone solicitation because two calls were abandoned, so she cannot satisfy the statutory "more than one call" threshold.

### I. Plaintiff fails to plausibly allege that Esurance made or is liable for the calls at issue.

Plaintiff does not plausibly allege that Esurance made the calls or that Esurance is responsible for the alleged third party's conduct. The TCPA provides a right of action to "[a] person who has received more than one telephone call within any 12-month period *by or on behalf of* the same entity" that violates subsection 227(c). 47 U.S.C. § 227(c)(5) (emphasis added). The GTSA similarly provides a

right of action to "[a]ny person that has received more than one telephone solicitation within any 12 month period *by or on behalf of* the same person or entity" that violates certain subsections. O.C.G.A. § 46-5-27 (emphasis added).

### A. Plaintiff does not allege that Esurance directly placed any of the calls.

To allege direct liability, Plaintiff must plead facts permitting a reasonable inference that Esurance itself initiated the calls. *See Gayle v. Bill Holt Auto., Inc.*, No. 1:22-CV-03184-ELR, 2023 WL 6192733, at *8 (N.D. Ga. July 10, 2023) ("[A] person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call." (quoting *In re Joint Pet. Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 (2013))). The Complaint does not do so. Instead, Plaintiff repeatedly alleges that the calls were made by "Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf." Doc. 1 ¶¶ 67, 69, 74. This "and/or" formulation does not identify who placed any of the alleged calls; it merely preserves every possible alternative.

The Complaint's factual allegations do not suggest direct liability. The calls came from three different 470-area-code numbers—not from a number the Complaint identifies as belonging to Esurance; two calls were abandoned before the caller even spoke; and the only non-abandoned call asked for "Ninapulin" and said it was calling "on behalf of" Esurance. *Id.* ¶¶ 29–46. None of these facts

supports a reasonable inference that Esurance dialed the number, owned or operated the lines, or employed the callers.

Moreover, judicially noticeable facts demonstrate that Esurance stopped marketing or offering new insurance policies approximately six years ago. Allstate, Esurance's parent company, announced in its 2019 SEC Form 10-K that "Esurance will be integrated into the Allstate brand in 2020" as part of Allstate's "Transformative Growth Plan." *See* Ex. A at 5. Allstate explained in its 10-K that it "will no longer need to use both the Allstate and Esurance brands for direct sales"—instead, "[a]ll consumers will have the opportunity to decide if they want access to an Allstate agency." *Id.* at 2. By 2020, that transition was complete. *See* The Allstate Corporation, 2021 Form 10-K (attached as **Exhibit B**) at 106. There is no plausible reason Esurance would conduct outbound telemarketing in 2026 to solicit new customers for policies it no longer sells. The far more likely explanation—and the one the Complaint's own allegations support—is that an unauthorized third-party lead generator or telemarketing operation used the Esurance name without authorization.

This Court, like other courts in this circuit, dismisses TCPA claims when a plaintiff relies on conclusory allegations that the defendant made or was involved in making calls. *See, e.g.*, *Gayle*, 2023 WL 6192733, at *6–7 (dismissing TCPA claim because "the mere fact that a company produces and sells a product does not

mean that it initiates telephone calls that may be made by resellers retailing that product"); *see also Belleville v. Fla. Ins. Servs., Inc.*, No. 23-14369, 2024 WL 2342337, at *1–4 (S.D. Fla. May 23, 2024) (TCPA claim failed where plaintiff alleged in conclusory fashion that the defendant was directly involved), *report and recommendation adopted in relevant part*, 2024 WL 2794108 (S.D. Fla. May 31, 2024); *Tuso v. Lennar Corp.*, No. 23-CV-22264, 2024 WL 1239474, at *3 (S.D. Fla. Mar. 22, 2024) (because plaintiff conceded the caller was "not employed by the Defendant, he cannot plausibly suggest that he's stated a viable claim for the Defendant's direct liability under the TCPA").

The same reasoning applies here. Identifying a brand or offering its product does not establish that the brand initiated the call. The Complaint must allege facts connecting Esurance to the act of dialing; it does not.

**B. Plaintiff pleads no facts supporting vicarious liability.**

The Complaint fares no better under a vicarious liability theory. Vicarious liability requires facts plausibly suggesting a common-law agency relationship. *Gayle*, 2023 WL 6192733, at *6. In the Eleventh Circuit, "[a]n agency relationship requires: '(1) the principal to acknowledge that the agent will act for it; (2) the agent to manifest an acceptance of the undertaking; and (3) control by the principal over the actions of the agent.'" *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1236 (11th Cir. 2014) (citation omitted). Similarly, under Georgia law,

"[t]he relation[ship] of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." *Hogsett v. Parkwood Nursing & Rehab. Ctr., Inc.*, 997 F. Supp. 2d 1318, 1324 (N.D. Ga. 2014) (quoting O.C.G.A. § 10-6-1).

The Complaint alleges no contract, vendor relationship, calling script, lead list, dialing technology, DNC-scrubbing process, approval procedure, payment arrangement, or supervisory control between Esurance and the callers. It does not identify any caller or entity that Esurance allegedly controlled. Without any allegation of authorization or control, the Complaint cannot support finding Esurance vicariously liable for the mystery callers. *See, e.g.*, *Tuso*, 2024 WL 1239474, at *3–4 (plaintiff failed to allege vicarious liability under the TCPA because "the Complaint hasn't alleged that [defendant] 'exercised substantial control over' an agent's actions, that it ratified an agent's conduct, or that it represented that an agent acted with its authority"). This makes sense given that Esurance has not marketed insurance policies in approximately six years.

The Complaint's only potentially relevant allegation is the callers' statements that they were calling "on behalf of Esurance." Doc. 1 ¶¶ 32, 42, 51. But "on behalf of" is a conclusion about a relationship—not factual support for one. *See, e.g.*, *Hirsch v. Ensurety Ventures, LLC*, 805 F. App'x 987, 989 n.2 (11th Cir. 2020) (affirming trial court's holding that calls made "by or on behalf of

Defendants" were insufficient to allege an agency relationship under the TCPA); *Gayle*, 2023 WL 6192733, at *6 ("Plaintiff's conclusory allegations that an agency relationship existed . . . and that discovery will reveal the existence of such a relationship are legally insufficient to get Plaintiff past the pleading stage on his agency theory of liability."). Plaintiff asks the Court to infer an agency relationship from the fact that the alleged calls involved Esurance products. That inference is not plausible without facts showing Esurance's control over the caller's conduct.

Based on the Complaint's allegations, and as supported by the judicially noticeable fact that Esurance *does not write new* insurance policies in 2026, it is not reasonable to infer direct liability or an agency relationship between Esurance and the Complaint's alleged callers. Because Plaintiff pleads neither that Esurance physically made the calls nor facts supporting vicarious liability, Plaintiff's claims fail.

## II. Plaintiff fails to state a TCPA claim because a cellular telephone subscriber is not a "residential telephone subscriber."

Congress enacted the TCPA in 1991, requiring the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights," including by the "establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations" (also known as the national Do-Not-Call Registry). 47 U.S.C. § 227(c)(1), (3); 47 C.F.R. § 64.1200.

"The term 'telephone solicitation' means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4). The TCPA required the FCC's regulations to "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database." *Id.* § 227(c)(3)(F); 47 C.F.R. § 64.1200(c)(2).

The TCPA provides a private right of action to "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity" in violation of regulations prescribed under subsection 227(c). 47 U.S.C. § 227(c)(5). In other words, if a "residential telephone subscriber" (*id.* § 227(c)(1)) receives more than one "telephone solicitation" (*id.* § 227(c)(3)(F)) from the same entity within a 12-month period (*id.* § 227(c)(5)), the TCPA grants that subscriber a private right of action against that entity.

Because the Complaint alleges that Plaintiff received calls on a cellular telephone—not a "residential telephone"—the TCPA does not provide Plaintiff with a right of action.

### A. Post-*McLaughlin* and *Loper Bright*, courts must independently interpret the TCPA without deference to the FCC.

While the FCC's regulations presume that a wireless subscriber who places a number on the national Do-Not-Call Registry is a residential subscriber, the Court

need not defer to an FCC interpretation that improperly expands the right of action Congress enacted in section 227(c)(5). *See In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14039 (2003); 47 C.F.R. § 64.1200(e). The FCC may implement rules within the authority Congress delegated; it may not convert a cellular telephone into a "residential telephone subscriber" when Congress used distinct terms and supplied no such authorization.

In *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, the Supreme Court clarified that the Hobbs Act does not prevent a district court from independently assessing whether an agency's interpretation of a statute is correct. 606 U.S. 146, 152–55 (2025). Instead, the Court must determine the meaning of the statute for itself under ordinary principles of statutory interpretation. *Id.* at 155. *Loper Bright Enterprises v. Raimondo* likewise requires courts to exercise independent judgment in interpreting statutes and rejects deference that permits an agency to resolve statutory ambiguity in place of the judiciary. 603 U.S. 369, 400–402 (2024). The relevant question, post-*McLaughlin* and *Loper Bright*, is what section 227(c) means—not what the FCC thinks it means.

**B. The TCPA's text distinguishes "residential" from "cellular" subscribers.**

A growing line of cases in and out of this circuit has recognized that the TCPA's text expressly distinguishes between "residential telephone" subscribers and "cellular telephone" subscribers. Indeed, last month, a federal district court in

Florida came to the same conclusion after an exceedingly thorough analysis: "The plain meaning of the term 'residential telephone subscriber' in § 227(c) does not cover cellular subscribers." *Anthony v. Brian Mktg. Grp.*, No. 24-80800-CIV, 2026 WL 2685650, at *6 (S.D. Fla. Sept. 11, 2026); *see also Conrad v. Hart Consumer Prods.*, No. 4:24-CV-307-CLM, 2026 WL 2741623 (N.D. Ala. Sept. 16, 2026) (applying *McLaughlin* and "declin[ing] to give the FCC's regulations the weight needed to overcome the court's conclusion about § 227(c)(5)'s plain meaning using common sense and canons of interpretation").[3]

The inquiry starts with the statute's text. The TCPA does not define "residential telephone subscriber," so the Court must give the term its ordinary meaning. *See Anthony*, 2026 WL 2685650, at *7 (citing *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012) ("When a term goes undefined in a statute,

---

[3] *See also, e.g.*, *Morris v. Lincare, Inc.*, No. 6:22-cv-1416, 2023 WL 5336780, at *4 (M.D. Fla. Aug. 18, 2023) ("While Plaintiff alleges she uses her cell phone as a residential line, the statute and case law make clear they are not one in the same."); *Cunningham v. Lines*, No. 1:16-cv-24890, 2016 WL 7494871, at *2 (S.D. Fla. Dec. 28, 2016) ("While Plaintiff argues that his cellular phone serves as both a mobile and residential line, the Eleventh Circuit distinguishes residential land line telephone numbers from cell-phone numbers." (citing *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1250 (11th Cir. 2014))); *Moore v. Triumph CSR Acquisition, LLC*, No. 23-CV-4659, 2023 WL 8601528, at *3 (N.D. Ill. Dec. 12, 2023) ("The text of the statute reflects common parlance and natural usage. A cell phone is not a residential phone."); *Gaker v. Q3M Ins. Sols.*, No. 3:22-CV-00296-RJC-DSC, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023) ("[T]he authority rests with Congress to amend the TCPA and bring cell phones within its protections.").

we give the term its ordinary meaning."); Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts*, 147, 429 (2012) (defining the foundational fixed-meaning canon as "the doctrine that words must be given the meaning they had when the text was adopted")). And "[w]hen examining the plain and ordinary meaning of a statute, 'one of the ways to figure out that meaning is by looking at dictionaries in existence around the time of enactment.'" *Id.* (quoting *United States v. Chinchilla*, 987 F.3d 1303, 1308 (11th Cir. 2021)). As the court in *Anthony* explained in its close examination of these dictionary definitions in 1991, when Congress enacted the TCPA, "the ordinary understanding of 'residential telephone subscriber' [w]as distinct from 'wireless telephone subscriber' and referr[ed] to persons who possess home phones, or landlines." *Id.* (collecting sources).

The TCPA's other provisions support drawing a distinction between "residential" and "cellular" subscribers. While Congress used the terms "residential telephone subscriber" and "residential telephone line" in subsections 227(c) and 227(b)(1)(B), it expressly referred to "any telephone number assigned to a *cellular telephone service*" in § 227(b)(1)(A)(iii) (emphasis added). These neighboring provisions show that Congress knew how to address wireless subscribers when it intended to do so. In section 227(c), it did not.[4]

[4] *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue as well as the language and design of the statute as a whole").

Provisions within section 227(c) itself also support the plain reading of "residential subscriber" as a non-cellular subscriber. Section 227(c)(3)(C) requires the FCC's regulations to "specify the methods by which each telephone subscriber shall be informed, *by the common carrier that provides local exchange service to that subscriber*," of the subscriber's right to join the Do-Not-Call Registry. 47 U.S.C. § 227(c)(3)(C) (emphasis added). "Local exchange services" are inherently physical, non-cellular services. *See Pub. Serv. Tel. Co. v. Ga. Pub. Serv. Comm'n*, 755 F. Supp. 2d 1263, 1266 (N.D. Ga. 2010) (explaining that "local exchange carriers" provide "wireline telephone services to customers" in a specific "local exchange service area"), *aff'd,* 404 F. App'x 439 (11th Cir. 2010). If a "common carrier . . . provides local exchange service" to residential telephone subscribers, then residential telephone subscribers simply cannot be cellular telephone subscribers.

Binding Eleventh Circuit authority confirms the same statutory separation. In *Osorio v. State Farm Bank, F.S.B.*, the court treated the phrase "residential telephone line" in subsection 227(b)(1)(B) as distinct from a telephone number assigned to "cellular telephone service" under subsection 227(b)(1)(A)(iii). 746

---

Reading "residential telephone subscriber" to include every cellular subscriber would erase the distinction Congress drew in the same statute. *See Russello v. United States*, 464 U.S. 16, 23 (1983) (when Congress includes particular language in one provision but omits it from another, the omission is presumed intentional).

F.3d at 1250. Although *Osorio* addressed subsection 227(b) (which established rules for automated calls), its reading of adjacent TCPA provisions confirms that "residential" and "cellular" are separate statutory categories. District courts in this circuit have applied the same distinction. *Morris*, 2023 WL 5336780, at *4 (holding that "residential telephone" in section 227(b) of the TCPA is distinct from a "cell phone"); *Cunningham*, 2016 WL 7494871, at *2 (holding that section 227(b) applies only to residential telephone lines, not cell phones).[5]

Although a few non-binding district court decisions have read section 227(c) to include cell phones, *Anthony* is more persuasive. In *Isaacs v. USHealth Advisors, LLC*, No. 3:24-cv-00216-LMM, 2025 WL 2268359 (N.D. Ga. Aug. 7, 2025) (May, C.J.), the Court relied on 2024 and 2025 dictionaries rather than the enactment-era dictionaries that control the meaning of a statute enacted in 1991. 2025 WL 2268359, at *3. *Isaacs* also invoked a policy concern that excluding cell phones would tie residential privacy to "an obsolete and disappearing phone technology," *id.* at *4, but that reasoning cannot replace the statutory text under the

---

[5] The GTSA, on the other hand, explicitly extends do-not-call protections beyond residential lines to cover cellular phones. O.C.G.A. § 46-5-27(b)(2), (c) (including "residential, mobile, or wireless" subscribers).

post-*McLaughlin* framework.[6] These non-binding decisions do not overcome the statute's text, which does not provide a right of action to cellular subscribers.

### C. Plaintiff's conclusory allegations cannot overcome the statute's plain text.

The Complaint's own allegations place Plaintiff outside section 227(c)(5). Plaintiff alleges that she uses the number as a "personal residential number," but she also admits that she has no landline, no other personal telephone number, and only a personal T-Mobile cellular plan. Doc. 1 ¶¶ 22–26. Those facts establish that the calls were received on a cellular telephone service. Personal use does not change the service to which the number is assigned.

Plaintiff's characterization of the number as "residential" is a legal conclusion, not a fact that can overcome the statute's distinction. A court need not accept "legal conclusions masquerading as facts" as true at the pleading stage. *M.H. ex rel. C.H. v. Omegle.com LLC*, 122 F.4th 1266, 1270 (11th Cir. 2024); *see also Gayle*, 2023 WL 6192733, at *6 ("As the Supreme Court has noted, . . . 'the doors of discovery' do not unlock 'for a plaintiff armed with nothing more than conclusions.'" (quoting *Carter v. DeKalb County*, 521 F. App'x 725, 728 (11th Cir. 2013))). The Court should not treat Plaintiff's label as an allegation that the

[6] In *Radvansky v. Bubolo Medical, LLC*, No. 1:25-cv-03168, 2025 WL 3306417 (N.D. Ga. Aug. 15, 2025) (Jones, J.), the Court simply followed *Isaacs* in a one-page discussion, without engaging in any independent statutory interpretation. *Id.* at *2.

number is a statutory residential telephone line. *See also, e.g.*, *Morris*, 2023 WL 5336780, at *1 (rejecting TCPA plaintiff's allegation that "her cellphone number [was] her residential telephone line").

Because Plaintiff alleges calls to a cellular number and section 227(c)(5) protects only residential telephone subscribers, she cannot state a TCPA claim. Count I should be dismissed with prejudice.

**III. Plaintiff alleges at most one telephone solicitation, which does not satisfy the statutory threshold.**

The TCPA and the GTSA only provide a right of action to a person who receives "more than one" telephone solicitation from the same entity in a 12-month period. 47 U.S.C. § 227(c)(5); O.C.G.A. § 46-5-27. Although Plaintiff alleges she received three calls to a number on the Do-Not-Call Registry, because two of the calls were abandoned, she received only one "telephone solicitation" and does not meet the statutory threshold for a right of action. Doc. 1 ¶¶ 29–53.

According to the Complaint, both the first call (July 23) and the third call (July 27) were abandoned. Plaintiff answered, said "hello" multiple times, no one responded, and the calls disconnected without identifying the caller or stating any purpose. *Id.* ¶¶ 29–30, 35–38. No commercial message was delivered; no product was mentioned; and no purchase was encouraged. *Cf.* 47 U.S.C. § 227(a)(4) (defining "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in,

property, goods, or services, which is transmitted to any person"); O.C.G.A. § 46-5-27(b)(3) (defining "telephone solicitation" as "any *voice communication* over a telephone line for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services" (emphasis added)). Only the second call (July 24) involving a caller who allegedly asked for "Ninapulin" and stated she was calling "on behalf of" Esurance to market automobile insurance arguably constitutes a telephone solicitation. Doc. 1 ¶¶ 31–34.

Plaintiff's after-the-fact callbacks to the first and third callers do not retroactively transform the abandoned calls into telephone solicitations. Plaintiff—not any alleged Esurance agent—initiated those calls. "[T]he TCPA specifically applies to calls initiated by defendants to residential telephone lines, not the inverse." *Schulz v. Infogroup, Inc.*, No. 3:19-CV-1620-N, 2020 WL 4201636, at *2 (N.D. Tex. July 21, 2020). The question under the TCPA and the GTSA is whether the calls Plaintiff received were "telephone solicitations"—not whether Plaintiff later inferred a purpose by making her own outbound calls.

Because, at most, only one of the three alleged calls qualifies as a telephone solicitation, Plaintiff cannot satisfy the "more than one" threshold required for a private right of action under either the TCPA or the GTSA.

## CONCLUSION

For the foregoing reasons, the Court should grant Esurance's Motion to Dismiss and dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted this 2nd day of October, 2026.

*\/s/ Jeffrey H. Fisher*

**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528
Phone: (404) 815-6500
Fax: (404) 815-6555

Jeffrey H. Fisher
GA Bar No. 981575
Jennifer L. Cotton
GA Bar No. 520708
jfisher@ktslaw.com
jcotton@ktslaw.com

*Counsel for Defendant Esurance Insurance Services, Inc.*

## CERTIFICATE OF FONT AND POINT SELECTION

I hereby certify that the foregoing was prepared in Times New Roman font, 14 point type, in compliance with Local Rule 5.1(C).

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I filed a copy of the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send notice of the filing to all parties of record.

Dated: October 2, 2026.

**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528
Phone: (404) 815-6500
Fax: (404) 815-6555

*<u>/s/ Jeffrey H. Fisher</u>*
Jeffrey H. Fisher
GA Bar No. 981575
jfisher@ktslaw.com

*Counsel for Defendant Esurance Insurance Services, Inc.*