**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| ERIN WILSON, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ESURANCE INSURANCE SERVICES, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action File No.:<br>1:26-cv-04428-ELR |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ESURANCE INSURANCE SERVICES, INC.'S MOTION TO DISMISS**

## INTRODUCTION

Plaintiff Erin Wilson placed her personal cell phone number on the National Do Not Call Registry on June 19, 2024. Doc. 1 ¶ 27. Two years later, over the span of five days in July 2026, that number received three telemarketing calls from Defendant Esurance Insurance Services, Inc. ("Esurance"). *Id.* ¶¶ 28–54. On the second call, the caller named Esurance and said she was calling to market Esurance automobile insurance policies, and Plaintiff told her not to call again. *Id.* ¶¶ 32–33. A third call came three days later. *Id.* ¶¶ 35–38. When Plaintiff called back the numbers that had called her, Esurance's representatives promoted Esurance automobile insurance products and confirmed that the earlier calls from those numbers had been made to advertise them. *Id.* ¶¶ 39–54.

Plaintiff sued under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and Georgia's Telephone Solicitations Act ("GTSA"), O.C.G.A. § 46-5-27. Esurance moves to dismiss on three grounds. Doc. 12-1. None has merit.

*First*, Esurance argues that the Complaint does not plausibly allege that it placed the calls. But the Complaint alleges that the July 24 caller named Esurance and pitched Esurance automobile insurance, and that when Plaintiff called back the numbers that had called her, Esurance's representatives promoted Esurance's insurance and confirmed the purpose of the earlier calls. Esurance's response is to ask the Court to adopt its own competing story: that "an unauthorized third-party lead generator or telemarketing operation used the Esurance name without authorization," a theory it builds on a parent company's 2019 SEC filing. Doc. 12-1 at 8. That is a factual dispute for discovery, not a basis for dismissal.

*Second*, Esurance argues that because Plaintiff received the calls on a cell phone, she is not a "residential telephone subscriber" protected by the TCPA's Do-Not-Call provisions. That argument ignores the statute's text, which protects a type of *subscriber*, not a type of telephone line, and it ignores the judges of this District who have rejected it. *See, e.g.*, *Isaacs v. USHealth Advisors, LLC*, No. 3:24-cv-00216-LMM, 2025 WL 2268359, at *3–4 (N.D. Ga. Aug. 7, 2025).

*Third*, Esurance argues that Plaintiff alleges at most one "telephone solicitation" because two of the three calls were silent when she answered. But the

Complaint alleges that Esurance's own representatives, on callback, confirmed that each of those earlier calls was made to advertise Esurance's insurance products. Doc. 1 ¶¶ 43–44, 51–52.

The Court should deny the motion.

## BACKGROUND

### A. The Statutory Framework

Congress enacted the TCPA in 1991 in response to consumers "outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers." Doc. 1 ¶ 1 (quoting Pub. L. No. 102-243, § 2(6), 105 Stat. 2394 (1991)). Section 227(c) directs the Federal Communications Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object," 47 U.S.C. § 227(c)(1), and authorizes "a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations," *id.* § 227(c)(3). That database is the National Do Not Call Registry. Under the FCC's regulations, telephone solicitations are prohibited to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2). The TCPA creates a private right of action for a person who "has received more than one telephone call within any 12-month period" in violation of those regulations. 47 U.S.C. § 227(c)(5).

Georgia law provides parallel protection. The GTSA makes it unlawful to make a telephone solicitation to a residential, wireless, or mobile telephone subscriber in Georgia who has registered his or her number on the National Do Not Call Registry or the Georgia Do Not Call List, and it provides a private right of action for injunctive relief and statutory damages of $1,000 per violation. Doc. 1 ¶¶ 17–20 (citing O.C.G.A. § 46-5-27).

**B. The Calls at Issue**

Plaintiff is a Georgia resident and the regular and sole user of a telephone number with a (404) area code. Doc. 1 ¶¶ 7, 21, 56. She uses that number as a personal residential number; she does not have a landline; she has no other telephone number she uses for personal purposes; she pays for a personal T-Mobile plan; and she does not use the number for business or commercial purposes. *Id.* ¶¶ 22–26. She registered the number on the National Do Not Call Registry on June 19, 2024. *Id.* ¶ 27.

Despite that registration, Plaintiff received three calls in July 2026. *Id.* ¶ 28. On July 23, 2026, she received a call from caller ID (470) 995-2211. She answered and said "hello" multiple times; no one responded, and the call disconnected without identifying the caller or the purpose of the call. *Id.* ¶¶ 29–30. The next day, July 24, 2026, she received a call from caller ID (470) 826-0674. The caller immediately asked for an individual identified as "Ninapulin" and then stated that she was calling

for Esurance to market or advertise Esurance automobile insurance policies. *Id.* ¶¶ 31–32. Plaintiff told the caller she was not "Ninapulin" and expressly instructed the caller not to call again. *Id.* ¶ 33. On July 27, 2026, at approximately 4:10 p.m., Plaintiff received another call, from caller ID (470) 762-3181. She answered and repeatedly said "hello," but no one responded, and the call disconnected without identifying the caller. *Id.* ¶¶ 35–37. Plaintiff possesses audio recordings of the July 24 and July 27 calls. *Id.* ¶¶ 34, 38.

To identify the source and purpose of the calls, Plaintiff returned them on July 27, 2026. *Id.* ¶¶ 39, 47. When she called (470) 762-3181, a representative asked whether she was "Ninapulin," stated that he was calling for Esurance, and immediately began promoting Esurance automobile insurance products. *Id.* ¶¶ 39–42. Plaintiff asked whether the call placed from that number approximately one minute earlier had likewise been made to advertise Esurance insurance products, and the representative confirmed that it had. *Id.* ¶¶ 43–44. When she called (470) 995-2211, the representative again asked whether she was "Ninapulin" and, when Plaintiff asked about the earlier call from that number, stated that it had been placed for Esurance to advertise Esurance automobile insurance products. *Id.* ¶¶ 47–52. Plaintiff told each representative that she was not "Ninapulin" and instructed Esurance not to call her number. *Id.* ¶¶ 45, 53.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead sufficient factual allegations "to raise [her] right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim has "facial plausibility" when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

### I. Plaintiff Plausibly Alleges That Esurance Made the Calls

Esurance first argues that the Complaint does not plausibly allege that Esurance placed the calls. Doc. 12-1 at 6–11. But the Court accepts the Complaint's factual allegations as true and draws all reasonable inferences in Plaintiff's favor, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and Rule 12(b)(6) does not test the truth of those allegations, *see Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002). Esurance's argument is a "we didn't do it" defense dressed up as a pleading challenge.

The Complaint's factual allegations permit the reasonable inference that Esurance made the calls. On July 24, a caller asked for "Ninapulin," named Esurance, and pitched Esurance automobile insurance. Doc. 1 ¶¶ 31–32. As the Eastern District of Michigan put it in denying a motion to dismiss, "[i]f a caller's

self-identification cannot be taken as an indication of their identity at the pleading stage, a nigh insurmountable barrier would be erected against recovery for consumers under the TCPA." *Dobronski v. CHW Grp.*, 2025 WL 2426370, at *3–4 (E.D. Mich. 2025). Nor does Plaintiff rely on that caller's word alone. When she dialed back the numbers that had called her, the representatives who answered asked whether she was "Ninapulin," the same name the July 24 caller had asked for, and confirmed that the earlier calls from those numbers had been made to advertise Esurance's automobile insurance. Doc. 1 ¶¶ 39–44, 47–52.

Esurance says the calls came from three different numbers and that nothing suggests Esurance "dialed the number, owned or operated the lines, or employed the callers." Doc. 12-1 at 7–8. But the representatives who answered at two of those numbers tied them to Esurance, and "it is reasonable to infer that the same caller is responsible for calls from the same number, whether those calls are answered or not." *Bird v. Pro Star Builders, Inc.*, No. 2:22-cv-03610-JLS-JEM, 2022 U.S. Dist. LEXIS 215155, at *8 (C.D. Cal. Nov. 28, 2022). Who owns the lines and who employs the callers are facts within Esurance's knowledge that "may be revealed only through discovery." *CHW Grp.*, 2025 WL 2426370, at *4. The "and/or" phrasing of the counts, Doc. 12-1 at 7, does not change this, because the Complaint's specific factual allegations identify who called.

Esurance's real argument is its own alternative story: because its parent's 2019 Form 10-K stated that "Esurance will be integrated into the Allstate brand in 2020," there is "no plausible reason Esurance would conduct outbound telemarketing in 2026," and the "far more likely explanation" is that "an unauthorized third-party lead generator or telemarketing operation used the Esurance name without authorization." Doc. 12-1 at 8. But a 2019 statement about which brands Allstate would use says nothing about who called Plaintiff in July 2026, and it cannot displace the allegation that the representatives answering the numbers that called her promoted Esurance's insurance and confirmed the purpose of the calls. The question is whether the facts alleged allow "the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, not whether Esurance's competing inference is less likely.

Esurance's cases do not help it. *Gayle v. Bill Holt Auto., Inc.*, No. 1:22-CV-03184-ELR, 2023 WL 6192733, at *6–7 (N.D. Ga. July 10, 2023), as Esurance quotes it, recognized that "the mere fact that a company produces and sells a product does not mean that it initiates telephone calls that may be made by resellers retailing that product." Doc. 12-1 at 8–9. Plaintiff does not allege that Esurance is liable because it sold a product that someone else resold; she alleges that the callers and the representatives answering at the numbers that called her identified Esurance and its insurance as the reason for the calls. Nor does her claim depend on the agency

theories Esurance addresses in Part I.B of its brief. *Id.* at 9–11. Esurance faults the Complaint for alleging "a conclusion about a relationship," *id.* at 10, but the Complaint alleges what was said on the calls, and the Court must accept those allegations as true. Esurance's argument as to Count II fails for the same reasons.

## II. Plaintiff Is a "Residential Telephone Subscriber" Protected by § 227(c) Because She Uses Her Cell Phone for Personal, Residential Purposes

Esurance's second argument is that Plaintiff has no claim under § 227(c)(5) because she received the calls on a cell phone. According to Esurance, "[t]he text of section 227(c) applies only to residential landline subscribers." Doc. 12-1 at 1. That is not what the statute says, and it is not what the judges of this District have held. Section 227(c) protects "residential telephone subscribers," 47 U.S.C. § 227(c)(1)—a category defined by who the subscriber is and how she uses her phone, not by the kind of network that carries the call. Since the Supreme Court's decision in *McLaughlin*, four different judges of this Court have applied that reading, as have courts around the country. Esurance's contrary authority consists of a default-judgment order from the Southern District of Florida that expressly "departs from" this Court's decision in *Isaacs*, cases construing a different subsection of the statute, and cases decided before *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), and *McLaughlin*.

### A. Courts Decide the Meaning of "Residential Telephone Subscriber" for Themselves, and the Judges of This District Who Have Done So Hold That Cell Phone Users Qualify

Plaintiff agrees with Esurance on the governing framework. After *McLaughlin*, "a district court must independently determine for itself whether the agency's interpretation of a statute is correct. District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *McLaughlin*, 606 U.S. at 155 (citing *Loper Bright*, 603 U.S. at 402); *see* Doc. 12-1 at 13.

That is exactly what the judges of this District have done. Before *McLaughlin*, courts in this District treated the FCC's 2003 Order as binding because of the Hobbs Act. *See Isaacs*, 2025 WL 2268359, at *2 (citing *Radvansky v. Kendo Holdings, Inc.*, 744 F. Supp. 3d 1314, 1319 (N.D. Ga. 2024)). After *McLaughlin*, however, "this Court must independently—and without deference to the FCC's decision—evaluate Defendant's argument that the term 'residential subscriber' excludes cell phone users." *Id.* And the judges of this Court who have taken up that question have answered it the same way:

> The following decisions, all from this District, hold that cell phone users are residential subscribers protected by § 227(c): *Isaacs v. USHealth Advisors, LLC*, No. 3:24-cv-00216-LMM, 2025 WL 2268359, at *2–4, 2025 U.S. Dist. LEXIS 152625 (N.D. Ga. Aug. 7, 2025); *Loudermilk v. Maelys Cosmetics USA, Inc.*, No. 1:24-cv-1866-AT, 2025 WL 3625779, at *2–3 (N.D. Ga. Dec. 11, 2025); *Radvansky*

*v. 1-800-Flowers.com, Inc.*, No. 1:25-cv-2811-TWT, 2026 WL 456919, at *3–4 (N.D. Ga. Feb. 17, 2026).

*Isaacs*, the first of these decisions and the most fully reasoned, rejected the same argument Esurance makes here. The plaintiff there, like Plaintiff here, alleged that he registered his cell phone number on the Do-Not-Call Registry, that he used the phone "for personal purposes and not for a business," and that he received unwanted telemarketing messages. *Isaacs*, 2025 WL 2268359, at *1. Chief Judge May held that "[t]he term 'residential' modifies 'subscribers,' meaning that the TCPA applies to a certain type of phone subscriber rather than to a particular type of phone technology." *Id.* at *3. Thus, "a 'residential subscriber' is a person who maintains a phone for the purposes of their private residence rather than for commercial or business purposes. In other words, a residential subscriber is a person who uses their phone for activities associated with their private, domestic life." *Id.* The defendant's contrary reading, the Court explained, "ignores the fact that 'residential' modifies 'subscriber,' meaning that the definition is tethered to a type of person rather than a type of technology." *Id.*

The Court also rejected the argument that Congress's use of "cellular telephone service" elsewhere in the statute shows that § 227(c) excludes cell phones, because "Defendant overlooks the fact that Congress has also used the term 'residential telephone line' elsewhere in the TCPA. Put differently, Congress has

sometimes limited the scope of the TCPA to specific types of phone lines, but, in this case, has limited the TCPA only to a particular type of subscriber." *Id.* (footnote omitted). That conclusion follows from the Eleventh Circuit's rule that "[W]hen a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings." *Id.* (quoting *Sunshine State Reg'l Ctr., Inc. v. Dir., U.S. Citizenship & Immigr. Servs.*, No. 24-10007, 2025 WL 1903192, at *10 (11th Cir. July 10, 2025)). And, "while not determinative," the Court observed that its reading "comports with the overall purpose of the TCPA," which "is designed to protect residential privacy." *Id.* at *4 (citing *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1258 (11th Cir. 2014)). "Regardless of whether a person receives a call to their home phone or a personal cell phone, the negative impact to their residential privacy remains the same." *Id.*

Esurance itself acknowledges that a second judge of this Court followed *Isaacs*. Doc. 12-1 at 18 n.6 (stating that the Court in *Radvansky v. Bubolo Medical, LLC*, No. 1:25-cv-03168, 2025 WL 3306417, at *2 (N.D. Ga. Aug. 15, 2025), "simply followed *Isaacs*"). Esurance faults *Bubolo* for not "engaging in any independent statutory interpretation," *id.*, but there is nothing improper about a court adopting the reasoning of a well-reasoned, on-point decision from its own district. Together with *Loudermilk* and *1-800-Flowers*, that makes four judges of this Court.

Esurance identifies no decision of any judge of this Court holding that a cell phone user cannot be a residential telephone subscriber under § 227(c).

### B. Courts Across the Country Applying *Loper Bright* and *McLaughlin* Agree

The judges of this District are in good company. Esurance asks this Court to follow a "growing line of cases," Doc. 12-1 at 13, but the weight of post-*Loper Bright* authority runs the other way. As one court recently put it, "the overwhelming majority of courts that have considered the issue post-Loper have reached the same conclusion: 'cellular telephone users can be considered "residential telephone subscribers" under § 227(c).'" *Callier v. Finish Line Inc.*, 2026 U.S. Dist. LEXIS 203594, at *15 (N.D. Tex. 2026) (internal citation omitted).

In *Wilson v. Hard Eight Nutrition LLC*, 804 F. Supp. 3d 1141 (D. Or. 2025), decided after *McLaughlin*, the Court held that "without deferring to the FCC, the Court independently concludes that the FCC got it right. Given the text, structure, and purpose of Section 227(c) and of the TCPA as a whole, a cell phone is presumptively a residential telephone under the TCPA do-not-call provision." *Id.* at 1151. In *McGonigle v. Dickey's Barbecue Restaurants, Inc.*, 2026 U.S. Dist. LEXIS 163300, at *9–10 (E.D. Va. 2026), the Court held that "the statutory language of Section 227 does not explicitly preclude a cell phone from being considered a 'residential telephone,'" and that "the use of 'residential' in the TCPA is not intended to preclude protections for cellular phones." In *Bennett v. Allstate Insurance Co.*,

2026 U.S. Dist. LEXIS 176840, at *10 (W.D. Tex. 2026), the Court "recommend[ed] the District Judge hold that Bennett can qualify as a residential telephone subscriber within the meaning of 47 C.F.R. §§ 64.1200(c) if he pleads that he received telephone calls and text messages on a cellular telephone that was used for residential purposes." These decisions apply exactly the independent analysis *McLaughlin* calls for, and they reach the result the judges of this District reached in *Isaacs* and its progeny.

### C. The Text and Structure of § 227(c) Confirm That "Residential" Describes the Subscriber, Not the Technology

Those decisions are right on the text. Section 227(c) directs the FCC to protect "residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object," 47 U.S.C. § 227(c)(1), and authorizes a national database of "telephone numbers of residential subscribers who object to receiving telephone solicitations," *id.* § 227(c)(3). The private right of action in § 227(c)(5) enforces "the regulations prescribed under this subsection." Nothing in any of those provisions mentions a landline, a wire, or a "line" of any kind. The word Congress chose to describe who is protected is "subscriber," and the word that modifies it, "residential," describes the use to which the subscriber puts her service.

Esurance's attack on *Isaacs* for using "2024 and 2025 dictionaries," Doc. 12-1 at 17, does not change that. The Court in *Hard Eight* looked to the dictionaries of 1991 and reached the same result. It explained that in 1991 *Webster's Ninth New*

*Collegiate Dictionary* defined "residential" as "used as a residence or by residents," so that "'residential telephone subscribers,' refers to individuals, subscribers, who make regular payments to use telephone service at home, that is, people who use a telephone for a personal or private purpose—a use traditionally tied to the home—as opposed to a commercial or business use." 804 F. Supp. 3d at 1149. The statute itself confirms the point: Congress elsewhere distinguished a "business subscriber" from a "residential subscriber," 47 U.S.C. § 227(a)(2)(A), and "thus contemplated two different telephone uses—business use and residential use—and did not equate a specific telephone use with a specific transmission technology." *Hard Eight*, 804 F. Supp. 3d at 1150. "Section 227(c)'s reference to 'residential telephone subscribers' indicates a specific use, a personal or private use, not a specific transmission technology." *Id.*

The structure of § 227 points the same way. Section 227(b) regulates automated calls and, in doing so, "lists the telephone technologies" through which they are made, including "cellular telephone service" in § 227(b)(1)(A)(iii) and a "residential telephone line" in § 227(b)(1)(B). *Hard Eight*, 804 F. Supp. 3d at 1148. Section 227(c), by contrast, "focuses not on the equipment used to generate and transmit calls but on end-user protections," and "does not refer to any kind of transmission technology; it does not refer to 'residential telephone line' or 'landline' or 'line.'" *Id.* at 1148. As the Court in *Hard Eight* put it, "Had Congress wished to

limit section 227(c) to specified telephone technologies rather than specified telephone subscribers, it would have indicated somewhere in that section that the [Do Not Call] registry is limited to a 'residential telephone line,' as Congress used that term in the preceding subsection." *Id.* at 1149 (quoting *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 WL 184449, at *6 (M.D. Pa. Jan. 17, 2024)) (emphasis omitted). Esurance invokes the canon that when Congress "includes particular language in one provision but omits it from another, the omission is presumed intentional." Doc. 12-1 at 16 (citing *Russello v. United States*, 464 U.S. 16, 23 (1983)). Plaintiff agrees—and the canon cuts against Esurance. Congress used the word "line" in § 227(b)(1)(B) and omitted it from § 227(c).

Esurance's remaining textual arguments fare no better. First, Esurance argues that reading "residential telephone subscriber" to include cell phone users "would erase the distinction Congress drew in the same statute." Doc. 12-1 at 16. It would not. Subsection (b) regulates calls by the technology and service to which they are directed—the provision Esurance cites reaches calls to "any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service," whether the subscriber is a household or a business—while subsection (c) protects a particular class of people. *See Isaacs*, 2025 WL 2268359, at *3; *Hard Eight*, 804 F. Supp. 3d at 1148. Second, Esurance points to § 227(c)(3)(C), which refers to the "common carrier that provides

local exchange service," and argues that residential subscribers therefore "simply cannot be cellular telephone subscribers." Doc. 12-1 at 16. But § 227(c)(3)(C) concerns how "each telephone subscriber shall be informed" of the right to register an objection; it does not use the word "residential" at all, and it says nothing about which subscribers are protected. Esurance's only authority for its reading is a decision describing "local exchange carriers" generally, not the TCPA. *Id.*

Third, Esurance relies on *Osorio*, *Morris v. Lincare, Inc.*, No. 6:22-cv-1416, 2023 WL 5336780 (M.D. Fla. Aug. 18, 2023), and *Cunningham v. Lines*, No. 1:16-cv-24890, 2016 WL 7494871 (S.D. Fla. Dec. 28, 2016), but Esurance itself acknowledges that *Osorio* "addressed subsection 227(b)," and that *Morris* and *Cunningham* concerned the "residential telephone line[s]" language of § 227(b). Doc. 12-1 at 16–17. Those cases interpret a different term in a different subsection. *See Isaacs*, 2025 WL 2268359, at *3 n.4 (explaining that *Osorio* "relies on this differing language" and "referenc[es] 47 U.S.C. § 227(b)(1)(B), which prohibits telephone calls to a 'residential telephone line' under certain circumstances"). *Osorio* in fact supports Plaintiff: as *Isaacs* observed, the Eleventh Circuit has recognized that the TCPA "is designed to protect residential privacy," 2025 WL 2268359, at *4 (citing *Osorio*, 746 F.3d at 1258), and privacy interests in the home do not depend on whether the intrusion arrives on a landline or a cell phone. The remaining cases Esurance cites, *Moore v. Triumph CSR Acquisition, LLC*, No. 23-CV-4659, 2023 WL

8601528 (N.D. Ill. Dec. 12, 2023), and *Gaker v. Q3M Insurance Solutions*, No. 3:22-CV-00296-RJC-DSC, 2023 WL 2472649 (W.D.N.C. Feb. 8, 2023), as well as *Morris* and *Cunningham*, were all decided in 2023 or earlier—before *Loper Bright* and *McLaughlin*—and none is binding. *See* Doc. 12-1 at 14 n.3; *Callier*, 2026 U.S. Dist. LEXIS 203594, at *15 (rejecting the defendant's contrary authority because "[m]ost, if not all, of these cases were decided prior to Loper, and, in any event, none are binding on this Court").

### D. The FCC's Regulations Apply to Wireless Numbers, and the Reasoning Behind Them Is Persuasive

Section 227(c)(5) creates a cause of action for calls made "in violation of the regulations prescribed under this subsection." Those regulations bar telephone solicitation of "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry," 47 C.F.R. § 64.1200(c)(2), and they "are applicable to any person or entity making telephone solicitations or telemarketing calls" to wireless numbers, *id.* § 64.1200(e). *See Dickey's*, 2026 U.S. Dist. LEXIS 163300, at *9–10. Esurance does not dispute that these regulations presume that wireless numbers on the Registry are residential; it concedes that "the FCC's regulations presume that a wireless subscriber who places a number on the national Do-Not-Call Registry is a residential subscriber." Doc. 12-1 at 12–13.

Esurance says the Court should give that presumption no weight. But *McLaughlin* requires district courts to afford "appropriate respect to the agency's

interpretation," 606 U.S. at 155, and the FCC's reasoning deserves it. The agency explained that "it is well-established that wireless subscribers often use their wireless phones in the same manner in which they use their residential wireline phones," and that "there is a growing number of consumers who no longer maintain wireline phone service, and rely only on their wireless telephone service." *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14038–39 ¶ 35 (2003). It also recognized that "determining whether any particular wireless subscriber is a 'residential subscriber' may be more fact-intensive than making the same determination for a wireline subscriber," and so adopted a presumption for subscribers who register, one that "may require a complaining wireless subscriber to provide further proof." *Id.* at 14039 ¶ 36. That is a rule about how residential status is proved, consistent with a statute that protects subscribers according to how they use their phones. The FCC also rejected the very argument Esurance advances here, reasoning that "had Congress intended to exclude wireless subscribers from the benefits of the TCPA, it knew how to address wireless services or consumers explicitly." *Id.* at 14038 ¶ 35. And the Court in *Hard Eight* independently agreed that "the FCC got it right." 804 F. Supp. 3d at 1151. Plaintiff's reading therefore does not depend on deference to the FCC; the text supports it independently. But the agency's considered view, which has stood for more than two decades, only confirms it.

### E. *Anthony* and *Conrad* Are Not Persuasive

Esurance's principal authority is *Anthony v. Brian Marketing Group*, No. 24-80800-CIV, 2026 WL 2685650 (S.D. Fla. Sept. 11, 2026), which it describes as the product of an "exceedingly thorough analysis." Doc. 12-1 at 14. Esurance does not mention that *Anthony* was an order denying a motion for *default judgment* against a defendant that never appeared. *See Anthony*, 2026 WL 2685650, at *2 n.4 (noting that the defendant "has not appeared or requested additional time to respond"). No party defended the FCC's regulations, and no adversarial briefing tested the Court's reasoning. *Anthony* is also not binding, and it recognized that it was breaking from this Court: "The Court departs from the one other district court in this circuit to address the question of whether the term 'residential telephone subscriber' excludes cellphone users after *Loper Bright* and *McLaughlin*," namely *Isaacs*. *Id.* at *8 n.10. *Anthony* likewise acknowledged that "courts generally have deferred to the FCC's 2003 redefinition" since 2003 and that "[s]everal courts have held that § 227(c) accords with the 'presumption' that cellphones are residential phones." *Id.* at *4, *5 n.8 (citing, among others, *Hard Eight*). It did not address *Loudermilk* or *1-800-Flowers*.

Nor are *Anthony*'s criticisms of *Isaacs* persuasive. *Anthony* called *Isaacs* "atextual and purposivist" because it "largely omits the word 'telephone' from the statutory phrase." *Anthony*, 2026 WL 2685650, at *8 n.10. But courts reading the

full phrase have explained that "residential" and "telephone" both modify "subscriber," so that "the statute speaks not of a 'residential telephone,' but rather, 'a "telephone subscriber" who has subscribed for "residential," i.e., personal, purposes.'" *Dobronski v. Rocket Mortg., LLC*, 2026 U.S. Dist. LEXIS 180350, at *38 (E.D. Mich. 2026) (citing *Jackson*, 2024 WL 184449, at *5). Calling *Isaacs* out for relying on modern dictionaries overlooks that *Hard Eight* relied on 1991-era sources and reached the same conclusion. And *Anthony* labels the privacy rationale "pure policy," *Anthony*, 2026 WL 2685650, at *11 n.14, but *Isaacs* expressly treated that rationale as "not determinative," 2025 WL 2268359, at *4; its holding rests on the text, as *Hard Eight*'s does.

Esurance's only other recent authority, *Conrad v. Hart Consumer Products*, No. 4:24-CV-307-CLM, 2026 WL 2741623 (N.D. Ala. Sept. 16, 2026), is supported by a single parenthetical. Doc. 12-1 at 14. It is a district court decision that does not bind this Court, and, as Esurance describes it, it rests on "common sense and canons of interpretation," *id.*, the same tools the judges of this District applied to reach the opposite result.[1]

[1] Esurance's motion on this ground is directed at Count I (the TCPA claim) only. Doc. 12-1 at 19 ("Count I should be dismissed with prejudice."). Esurance concedes that the Georgia Telephone Solicitations Act "explicitly extends do-not-call protections beyond residential lines to cover cellular phones." *Id.* at 17 n.5.

### F. Plaintiff Alleges Facts, Not Legal Conclusions, Establishing That She Is a Residential Subscriber

Esurance's final argument is that Plaintiff's allegation that her number is "residential" is a "legal conclusion." Doc. 12-1 at 18. But Esurance's own summary of the Complaint shows that Plaintiff alleges the underlying facts. Esurance acknowledges that Plaintiff is "the regular and sole user" of the number; that she "describes her cell phone as 'personal' and 'residential'"; and that she alleges "that she does not have a landline, has no other telephone number for personal use, and maintains the number through a personal T-Mobile cellular plan." Doc. 12-1 at 3 (citing Doc. 1 ¶¶ 7, 21–26, 56). She further alleges that she registered the number on the National Do-Not-Call Registry on June 19, 2024, before the calls at issue. *Id.* (citing Doc. 1 ¶¶ 27–28). Those are allegations of fact: how Plaintiff uses her phone, whether she has any other phone, and who pays for the service.

They are materially the same as allegations courts have found sufficient. In *Isaacs*, the plaintiff alleged that he used his cell phone "solely for 'personal and residential purposes,' such as communicating with friends and family," did not use it for a business, and that it was "his primary means of telephonically communicating with others." 2025 WL 2268359, at *4. That sufficed: "Plaintiff is a 'residential subscriber,' meaning that he is entitled to the TCPA's protections." *Id.* In *Hard Eight*, the plaintiff alleged that he had no home landline, that his cell phone was his residential telephone used for "personal and household purposes," and that a

business did not pay his phone bill; the Court held that he "sufficiently pleads a claim under § 227(c)(5)." 804 F. Supp. 3d at 1151. Plaintiff's allegations are the same in substance, and she is also entitled to the presumption the FCC adopted for wireless subscribers who register their numbers. 18 FCC Rcd. at 14039 ¶ 36. Because Plaintiff plausibly alleges that she is a residential telephone subscriber, Esurance's motion to dismiss Count I on this ground should be denied.

## III. Plaintiff Plausibly Alleges More Than One Telephone Solicitation Within Twelve Months

Esurance's last argument is that Plaintiff received only one "telephone solicitation" because two of the three calls went silent when she answered. Doc. 12-1 at 19–20. But the TCPA requires "more than one telephone call" within twelve months, 47 U.S.C. § 227(c)(5), and Esurance does not dispute that the Complaint alleges three calls to a Registry number in five days. Its argument is that two of them did not deliver a sales pitch.

The definition Esurance invokes turns on the call's purpose, not on how much of a pitch the consumer hears: a "telephone solicitation" is "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." Doc. 12-1 at 19–20 (quoting 47 U.S.C. § 227(a)(4)). Esurance cites no decision holding that a call placed to sell something stops being a solicitation because the line went silent after the consumer answered.

The Complaint alleges facts showing the purpose of each call. Esurance concedes that the July 24 call "arguably" was a solicitation, Doc. 12-1 at 20, and on that call the caller named Esurance and pitched Esurance automobile insurance, Doc. 1 ¶ 32. When Plaintiff dialed back the numbers behind the other two calls, the representatives who answered each asked whether she was "Ninapulin," the same name the July 24 caller had asked for, and each said that the earlier call from that number had been made to advertise Esurance's automobile insurance. *Id.* ¶¶ 40–44, 48–52. Those facts support the inference that all three calls were part of one effort to sell Esurance insurance. *See Bird*, 2022 U.S. Dist. LEXIS 215155, at *8.

Nor do Plaintiff's callbacks "retroactively transform" the earlier calls. Doc. 12-1 at 20. Plaintiff does not sue on her callbacks; she sues on the three calls she received, and she alleges the callbacks to show what those calls were for. Esurance's authority, as it quotes it, holds only that the TCPA "applies to calls initiated by defendants to residential telephone lines, not the inverse." *Schulz v. Infogroup, Inc.*, No. 3:19-CV-1620-N, 2020 WL 4201636, at *2 (N.D. Tex. July 21, 2020). Each of the three calls here was placed to Plaintiff, not by her. The motion should be denied on this ground as to both counts.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Esurance's Motion to Dismiss in its entirety. In the alternative, should the Court find

any portion of the Complaint deficient, Plaintiff respectfully requests leave to amend rather than dismissal with prejudice, as Esurance requests. *See* Doc. 12-1 at 2, 19.

Respectfully submitted this 12th day of October, 2026.

*/s/ Anthony I. Paronich*
Anthony I. Paronich, Pro Hac Vice
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Valerie Chinn, Georgia Bar No. 248468
CHINN LAW FIRM, LLC
6000 Lynmark Way
Suite 106 #1320
Fairburn, GA 30213
Direct: 404-955-7732
Email: vchinn@chinnlawfirm.com

***Counsel for Plaintiff and the Proposed Classes***

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(D)**

Pursuant to Local Rule 7.1(D), the undersigned certifies that the foregoing has been prepared in Times New Roman 14-point font, one of the font and point selections approved by the Court in Local Rule 5.1(C).

*/s/ Anthony I. Paronich*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 12, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system

*/s/ Anthony I. Paronich*