**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ERIN WILSON, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ESURANCE INSURANCE SERVICES, INC.,<br><br>Defendant. | Civil Action File No.:<br>1:26-cv-04428-ELR |

**REPLY IN SUPPORT OF DEFENDANT ESURANCE INSURANCE SERVICES, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

KILPATRICK TOWNSEND
& STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528
Phone: (404) 815-6500
Fax: (404) 815-6555

Jeffrey H. Fisher
GA Bar No. 981575
Jennifer L. Cotton
GA Bar No. 520708
jfisher@ktslaw.com
jcotton@ktslaw.com

*Counsel for Defendant Esurance Insurance Services, Inc.*

# TABLE OF CONTENTS


INTRODUCTION .......... 1

ARGUMENT .......... 2

I. Plaintiff has abandoned vicarious liability, and her allegations do not plausibly show that Esurance itself placed the calls. .......... 2

II. Section 227(c)(5) does not provide a private right of action to cellular telephone subscribers. .......... 5

A. The Court should not follow non-binding decisions from this District that other courts have criticized. .......... 6

B. A growing line of post-*McLaughlin* authority holds that cell phone users are not "residential telephone subscribers." .......... 9

C. Plaintiff's allegations establish that she is a cellular subscriber, which ends the inquiry. .......... 13

III. Plaintiff alleges, at most, one telephone solicitation. .......... 13

CONCLUSION .......... 14

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anthony v. Brian Mktg. Grp.*,
No. 24-80800-CIV, 2026 WL 2685650 (S.D. Fla. Sept. 11, 2026) ...........*passim*

*Bryant v. Avado Brands, Inc.*,
187 F.3d 1271 (11th Cir. 1999) ....................................................................4

*Callier v. Finish Line Inc.*, No. 3:25-CV-2331-B-BK, 2026 WL 2654093 (N.D. Tex. Aug. 19, 2026), *report and recommendation adopted*, 2026 WL 2648113 (N.D. Tex. Sept. 8, 2026) ......................................9

*Conrad v. Hart Consumer Prods.*,
No. 4:24-CV-307-CLM, 2026 WL 2741623 (N.D. Ala. Sept. 16, 2026) ...................................................................................12, 13

*Dobronski v. CHW Group, Inc.*,
No. 24-CV-11649, 2025 WL 2426370 (E.D. Mich. Aug. 21, 2025) ...................4

*Gayle v. Bill Holt Auto., Inc.*,
No. 1:22-CV-03184-ELR, 2023 WL 6192733 (N.D. Ga. July 10, 2023) .......................................................................................2, 5

*In re Joint Pet. Filed by Dish Network, LLC*,
28 FCC Rcd. 6574, 6583 (2013)....................................................................3

*Ins. Mktg. Coal. Ltd. v. FCC*,
127 F.4th 303 (11th Cir. 2025) ...............................................................9, 12

*Isaacs v. USHealth Advisors, LLC*,
No. 3:24-cv-00216-LMM, 2025 WL 2268359 (N.D. Ga. Aug. 7, 2025) .................................................................................*passim*

*Koeller v. OX AppSec Security, Inc.*,
No. 4:25-cv-0641-MTS, 2026 WL 2935851 (E.D. Mo. Sept. 30, 2026) .................................................................................*passim*

*Loudermilk v. Maelys Cosms. USA, Inc.*,
No. 1:24-CV-1866-AT, 2025 WL 3625779 (N.D. Ga. Dec. 11, 2025) ....8

*Lowrey v. Twilio, Inc.*,
No. 6:25-CV-00116, 2026 WL 2958730 (W.D. Va. Oct. 1, 2026) ....2, 8, 10, 11

*Radvansky v. 1-800-Flowers.com, Inc.*,
No. 1:25-CV-2811-TWT, 2026 WL 456919 (N.D. Ga. Feb. 17, 2026) ....8

*Radvansky v. Bubolo Med., LLC*,
No. 1:24-CV-04365-SCJ, 2025 WL 3306417 (N.D. Ga. Aug. 15, 2025) ....8

*In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014 (2003) ....12

*Schulz v. Infogroup, Inc.*,
No. 3:19-CV-1620-N, 2020 WL 4201636 (N.D. Tex. July 21, 2020) ....14

*Tuso v. Lennar Corp.*,
No. 23-CV-22264, 2024 WL 1239474 (S.D. Fla. Mar. 22, 2024) ....5

*United States v. Chinchilla*,
987 F.3d 1303 (11th Cir. 2021) ....8

*Wilkerson v. Insureme Inc.*,
No. 6:25-CV-676-LHP, 2026 WL 809589 (M.D. Fla. Mar. 24, 2026) ....5

*Wilson v. Hard Eight Nutrition LLC*,
804 F. Supp. 3d 1141 (D. Or. 2025) ....7, 8, 10

**Statutes**

47 U.S.C. § 227(a)(4) ....13

47 U.S.C. § 227(b) ....11

47 U.S.C. § 227(b)(1)(A)(iii) ....11

47 U.S.C. § 227(b)(1)(B) .......................................................................... 11

47 U.S.C. § 227(c) .......................................................................... 5, 6, 9, 11

47 U.S.C. § 227(c)(1) .......................................................................... 6

47 U.S.C. § 227(c)(5) .......................................................................... *passim*

O.C.G.A. § 46-5-27(b)(3) .......................................................................... 13

## INTRODUCTION

Plaintiff Erin Wilson is a serial TCPA plaintiff who invites telemarketing calls to manufacture litigation. But her claims against Esurance stretch the TCPA beyond its breaking point and should be dismissed. Plaintiff's Opposition confirms that her Complaint fails for three reasons.

First, Plaintiff now disclaims any theory of vicarious liability. Her claims therefore depend on whether Esurance itself placed the calls. Her own allegations—callers using three different numbers, asking for someone named "Ninapulin," and calling "on behalf of" Esurance (a company that has not marketed or sold insurance for more than half a decade)—fail to plausibly allege that Esurance initiated the calls.

Second, section 227(c)(5) gives a right of action only to residential telephone subscribers, and Plaintiff—who received the alleged calls on a cellular telephone—is not one. Two more courts have recently joined a growing number of decisions holding that cellular telephone subscribers are not "residential telephone subscribers" under the TCPA. In *Koeller v. OX AppSec Security, Inc.*, a case in which Plaintiff's counsel represented the plaintiff, the court dismissed a materially similar complaint because the TCPA's do-not-call right of action "is only for subscribers of a residential telephone service, not a cellular telephone service." No. 4:25-cv-0641-MTS, 2026 WL 2935851, at *1 (E.D. Mo. Sept. 30, 2026); *see also*

*Lowrey v. Twilio, Inc.*, No. 6:25-CV-00116, 2026 WL 2958730 (W.D. Va. Oct. 1, 2026) (same). These courts read the statute as written: a residential telephone is a home phone, and a cell phone is not. This Court should do the same.

Third, because two of the three alleged calls were silent, Plaintiff alleges, at most, one telephone solicitation. A caller who says nothing solicits nothing.

The Court should grant Esurance's motion and dismiss the Complaint with prejudice.

## ARGUMENT

### I. Plaintiff has abandoned vicarious liability, and her allegations do not plausibly show that Esurance itself placed the calls.

In its opening brief, Esurance explained why Plaintiff failed to allege that Esurance is directly or vicariously liable for the calls at issue. *See* Doc. 12-1 at 6–11 (addressing direct liability in section I.A and vicarious liability in section I.B). In her Opposition, Plaintiff disclaims that her claims depend on "the agency theories Esurance addresses in Part I.B of its brief." Doc. 13 ("Opp.") at 7–8. Plaintiff therefore must proceed under a direct liability theory.

To allege direct liability, Plaintiff must plead facts permitting a reasonable inference that Esurance itself "initiate[d]" the calls—that it "t[ook] the steps necessary to physically place a telephone call." *Gayle v. Bill Holt Auto., Inc.*, No. 1:22-CV-03184-ELR, 2023 WL 6192733, at *8 (N.D. Ga. July 10, 2023) (quoting

*In re Joint Pet. Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 (2013)). The Complaint fails to allege facts that support a reasonable inference of direct liability.

The Complaint does not allege that Esurance made the calls, owned the numbers, controlled the calling platform, employed the callers, supplied the lead, or directed the calls; it alleges that a third party made them on Esurance's behalf. Plaintiff alleges that the July 24 caller said she was calling "on behalf of" Esurance, the person who answered her first callback said he was "calling on behalf of Esurance," and the person who answered her second callback said the earlier call "had been placed on behalf of Esurance." Doc. 1 ¶¶ 32, 42, 51. A person who calls "on behalf of" a company is someone other than the company. The statute recognizes this distinction: section 227(c)(5) provides a cause of action to a person receiving more than one prohibited telephone call "by ***or*** on behalf of the same entity." 47 U.S.C. § 227(c)(5) (emphasis added). Allegations of calls made "on behalf of" Esurance do not plausibly allege calls initiated "by" Esurance.

The Complaint's other allegations also point to a third-party caller. Plaintiff argues "it is reasonable to infer that the same caller is responsible for calls from the same number, whether those calls are answered or not." Opp. at 6. But the Complaint alleges these calls came from three *different* numbers. Doc. 1 ¶¶ 29–38. The only caller who spoke, and both persons who answered Plaintiff's callbacks, asked for "Ninapulin"—not Plaintiff. *Id.* ¶¶ 31–33, 39–42, 47–52. Three different

phone numbers and an incorrect name support an inference of a third-party caller using a lead list—not of Esurance contacting its own prospects.

Esurance's six-year absence from the market likewise renders implausible Plaintiff's allegation that Esurance initiated the calls. Plaintiff fails to engage meaningfully with Allstate's public and judicially noticeable SEC filings, instead arguing these filings "cannot displace the allegation that the representatives answering the numbers that called her promoted Esurance's insurance and confirmed the purpose of the calls." Opp. at 7. But Allstate's SEC disclosures state that Esurance stopped marketing or offering new insurance policies approximately six years ago. Doc. 12-2 at 2, 5; Doc. 12-3 at 106. Given these disclosures, Plaintiff cannot plausibly allege that Esurance itself initiated these calls. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).

Plaintiff cites an out-of-circuit district court decision, *Dobronski v. CHW Group, Inc.*, No. 24-CV-11649, 2025 WL 2426370, at *3–4 (E.D. Mich. Aug. 21, 2025), to argue that "[i]f a caller's self-identification cannot be taken as an indication of their identity at the pleading stage, a nigh insurmountable barrier would be erected against recovery for consumers under the TCPA." Opp. at 5–6. But in *Dobronski*, the plaintiff alleged that the callers "identified themselves as 'with' or 'from'" the defendant. 2025 WL 2426370, at *3. Plaintiff, in contrast, alleges that the calls were made "on behalf of" Esurance. Doc. 1 ¶¶ 32, 42, 51.

Plaintiff argues the callers "identified Esurance and its insurance *as the reason for the calls*," Opp. at 7 (emphasis added), but a caller identifying Esurance as a "reason" for a call is not the same as a caller identifying itself as Esurance.

As this Court explained in *Gayle*, a defendant "cannot be held directly liable pursuant to the TCPA solely because" its products are being offered in the communication at issue. 2023 WL 6192733, at *9.[1] Without alleging that the callers themselves were employed by Esurance, Plaintiff cannot establish direct liability. *See* Doc. 12-1 at 17 (citing *Tuso v. Lennar Corp.*, No. 23-CV-22264, 2024 WL 1239474 (S.D. Fla. Mar. 22, 2024) ("[H]aving conceded that [the caller] is *not* employed by the Defendant, [plaintiff] cannot plausibly suggest that he's stated a viable claim for the Defendant's direct liability under the TCPA.")).

The Complaint fails to plausibly allege that Esurance initiated any call to Plaintiff. Counts I and II should be dismissed.

## II. Section 227(c)(5) does not provide a private right of action to cellular telephone subscribers.

The text, structure, and history of subsection 227(c) show that Congress used "residential telephone subscriber" to mean a subscriber to home telephone service—not anyone who uses a mobile phone for personal purposes. A growing

---

[1] *See also Wilkerson v. Insureme Inc.*, No. 6:25-CV-676-LHP, 2026 WL 809589, at *3 (M.D. Fla. Mar. 24, 2026) (plaintiff failed to sufficiently allege direct liability because the complaint was "devoid of any allegations suggesting [defendant]'s direct involvement in any of the calls and/or texts in question").

line of post-*McLaughlin* decisions agrees, and this Court need not follow the non-binding decisions holding otherwise.

### A. The Court should not follow non-binding decisions from this District that other courts have criticized.

Plaintiff's lead argument is a headcount: four judges of this District have read subsection 227(c) to include cell phone users. Opp. at 8–12. None of those decisions binds this Court, and other courts have criticized the reasons underlying these decisions.

Plaintiff calls *Isaacs v. USHealth Advisors, LLC*, No. 3:24-cv-00216-LMM, 2025 WL 2268359 (N.D. Ga. Aug. 7, 2025), "the first of these decisions and the most fully reasoned." Opp. at 10–11. In *Isaacs*, the court asked whether the plaintiff was a "residential subscriber" under section 227(c) and concluded that "residential" describes "a type of *person* rather than a type of *technology*." 2025 WL 2268359, at *3. But section 227(c) protects the privacy rights of "residential *telephone* subscribers." 47 U.S.C. § 227(c)(1) (emphasis added). As the Southern District of Florida recently explained, *Isaacs* "omits the word 'telephone' from the statutory phrase." *Anthony v. Brian Mktg. Grp.*, No. 24-80800-CIV, 2026 WL 2685650, at *8 n.10 (S.D. Fla. Sept. 11, 2026). Plaintiff concedes she must be a "residential telephone subscriber" but fails to address *Isaacs*' omission of the word "telephone." *See* Opp. at 22 (arguing "Plaintiff plausibly alleges that she is a residential *telephone* subscriber" under the TCPA (emphasis added)). That

omission is dispositive: read as Congress wrote it, "residential" describes the type of telephone service—a home phone—not the type of person who subscribes. A cell phone that can be used anywhere is not a residential telephone, and a cellular telephone subscriber like Plaintiff is not a residential telephone subscriber.

In analyzing the "ordinary definition" of "residence" and "subscriber," *Isaacs* improperly looked to the 2025 Oxford English Dictionary and the 2024 Black's Law Dictionary. 2025 WL 2268359, at *3. As the *Anthony* court explained, this approach does not align with the Eleventh Circuit's directive to determine "the plain and ordinary meaning of a statute, . . . by looking at dictionaries in existence around the time of enactment." 2026 WL 2685650, at *7 (quoting *United States v. Chinchilla*, 987 F.3d 1303, 1308 (11th Cir. 2021)); *see id.* at *8 n.10 (concluding that *Isaacs* is "atextual and purposivist" because, *inter alia*, it "hinges largely on current dictionaries"). Congress enacted the TCPA in 1991—over three decades before the modern dictionaries that *Isaacs* consulted. *Id.* at *2.

Recognizing *Isaacs*' improper reliance on modern dictionary definitions, Plaintiff relies on an Oregon district court case that "looked to the dictionaries of 1991." Opp. at 13–14 (citing *Wilson v. Hard Eight Nutrition LLC*, 804 F. Supp. 3d 1141 (D. Or. 2025)). But *Hard Eight*, like *Isaacs*, assumed that "'[r]esidential' modifies 'telephone subscribers'" (without examining whether "residential" modifies just "telephone") and cited cases defining "residential subscriber"

(without addressing the omission of the word "telephone" from that phrase). 804 F. Supp. 3d at 1149. Other recent cases examining enactment-era dictionaries have concluded, like *Anthony*, that "§ 227(c)(5) does not extend to wireless subscribers." *Koeller*, 2026 WL 2935851, at *1 (citing *Webster's Third New International Dictionary* (1981); *Black's Law Dictionary* (6th ed. 1990)); *see also Lowrey*, 2026 WL 2958730, at *6–7 (same).

Courts following *Isaacs* have compounded the error of its purpose-driven analysis by adding their own policy rationales. *Bubolo*, *Loudermilk*, and *1-800-Flowers* each followed *Isaacs*. Opp. at 11 (conceding *Bubolo* followed *Isaacs* without independently analyzing the statutory language).[2] In *Loudermilk*, Judge Totenberg "agree[d] with" *Isaacs* and made two additional observations: (1) "on a practical level, . . . Defendant's interpretation – that the TCPA's protections only apply to landline phones – is untenable in today's world"; and (2) "various other courts across the nation have also reached the same determination." 2025 WL 3625779, at *3; *see also 1-800-Flowers.com,* 2026 WL 456919, at *2–3 (finding persuasive the policy concerns articulated in *Isaacs* and *Loudermilk*).

---

[2] Citing *Loudermilk v. Maelys Cosms. USA, Inc.*, No. 1:24-CV-1866-AT, 2025 WL 3625779, at *3 (N.D. Ga. Dec. 11, 2025); *Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-CV-2811-TWT, 2026 WL 456919 (N.D. Ga. Feb. 17, 2026); *Radvansky v. Bubolo Med., LLC*, No. 1:24-CV-04365-SCJ, 2025 WL 3306417, at *2 (N.D. Ga. Aug. 15, 2025).

As *Anthony* explained in rejecting *Isaacs*' policy-based rationale, "[i]t is not the courts' job to prevent legislation from becoming obsolete or to 'update' the law to match up with technological evolution." 2026 WL 2685650, at *11 n.14 (citing, *e.g.*, *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, 313 (11th Cir. 2025)). *Koeller* recently rejected the same policy-based argument, explaining that "updating the statute to address present needs is Congress's job, not the courts." 2026 WL 2935851, at *3 (citations omitted). "This Court simply reads the statute as written," and "§ 227(c)(5) does not extend to subscribers of a cellular telephone service." *Id.* This Court should not follow the "atextual and purposivist" non-binding decisions from other judges in this District. *Anthony*, 2026 WL 2685650, at *8 n.10.

**B. A growing line of post-*McLaughlin* authority holds that cell phone users are not "residential telephone subscribers."**

Plaintiff asserts that "the weight of post-*Loper Bright* authority" favors her, quoting a Texas court's description of an "overwhelming majority." Opp. at 12 (quoting *Callier v. Finish Line Inc.*, No. 3:25-CV-2331-B-BK, 2026 WL 2654093, at *6 (N.D. Tex. Aug. 19, 2026), *report and recommendation adopted*, 2026 WL 2648113 (N.D. Tex. Sept. 8, 2026)). But the most recent and most thorough decisions—those applying the TCPA's enactment-era meaning—hold the opposite.

The *Anthony* decision is in-circuit, and it post-dates every case that Plaintiff cites. 2026 WL 2685650, at *8–12. In *Anthony*, the court held that "[t]he plain meaning of the term 'residential telephone subscriber' in § 227(c) does not cover

cellular subscribers." *Id.* at *6. Plaintiff's principal criticism of *Anthony* is that it arose on a motion for default judgment, Opp. at 19, but "a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." *Anthony*, 2026 WL 2685650, at *2 (citation omitted). *Anthony* decided the same question presented here, under the same standard, in a thorough analysis that considered every argument that Plaintiff makes. *Id.* at *8–12; *cf.* Opp. at 8–22.

Two even more recent out-of-circuit decisions, *Koeller* and *Lowrey*, reached the same result after full briefing by both sides (in *Koeller*, by the same attorney representing Plaintiff in this case). Both decisions came out weeks before Plaintiff filed her Opposition in this case, and Plaintiff addresses neither.

In *Koeller*, the Eastern District of Missouri acknowledged that "[m]any district courts have adopted the FCC's interpretation"—citing *Isaacs* and *Hard Eight*—but agreed with *Anthony* and concluded that "§ 227(c)(5) does not extend to wireless subscribers." 2026 WL 2935851, at *2. The court reasoned that, when Congress enacted the TCPA, "residential" meant "of, relating to, or connected with residence or residences," and "residence" meant "[a] house where one's home is; a dwelling house." *Id.* (citing *Webster's Third New International Dictionary* (1981) and *Black's Law Dictionary* (6th ed. 1990)). "Put differently, a residential telephone is simply a home phone." *Id.* And a cell phone, "which is mobile and not connected to a house, fixed abode, or dwelling, is not 'residential.'" *Id.* at *3

(citation omitted). *Koeller* found confirmation in section 227(b), whose separate treatment of "cellular telephone service" and "residential telephone line[s]" "shows that Congress knew how to refer to cellular telephone subscribers when it wanted to, and that it chose not to" in section 227(c). *Id.*[3]

One day later, *Lowrey* reached the same conclusion. The Western District of Virginia held that section 227(c) "does not apply to cellphones, only residential lines," because "a residential telephone is uniquely tied to a person's dwelling," while "a cellphone is a portable device that can be used anywhere by connecting to a mobile network." 2026 WL 2958730, at *6. The *Lowrey* court reasoned that treating "residential telephone line" and "cellular telephone service" as interchangeable would render one of section 227(b)'s parallel prohibitions superfluous. *Id.* at *7.[4]

These more recent decisions reflect a broader shift: as post-*McLaughlin* decisions diverge from the FCC's atextual interpretation, courts are increasingly reading the TCPA as Congress wrote it in 1991. Before *McLaughlin*, "[e]veryone

---

[3] Plaintiff argues this principle "cuts against Esurance" because Congress used the word "line" in section 227(b)(1)(B) but not in section 227(c). Opp. at 15–16. But in 1991, Congress did not need the word "line" to describe a home telephone service; "residential telephone" did that work. *See Anthony*, 2026 WL 2685650, at *7 (when Congress enacted the TCPA, "it was understood that a 'residential telephone' referred to a land line at a residence" (citation omitted)).

[4] *See* Doc. 12-1 at 15 (making the same argument regarding subsections 227(b)(1)(B) and 227(b)(1)(A)(iii)).

accepted what the FCC said as law under the Hobbs Act," but "that deference is gone." *Conrad v. Hart Consumer Prods.*, No. 4:24-CV-307-CLM, 2026 WL 2741623, at *12 (N.D. Ala. Sept. 16, 2026). But applying the fixed-meaning canon, courts are now refusing to expand section 227(c)(5) "to capture modern annoyances." *Id.* at *11.

Plaintiff argues that the FCC's 2003 presumption still deserves "appropriate respect," Opp. at 17–19, but the FCC's reasoning does not withstand independent review. The FCC reasoned that "wireless subscribers often use their wireless phones in the same manner in which they use their residential wireline phone," many consumers had dropped wireline service, and extending protection was "more consistent with the overall intent of the TCPA." *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14038–39 (2003). Those policy reasons may explain why extending the Do-Not-Call Registry to cell phones could be desirable, but the FCC's authority to implement the TCPA does not permit it to redefine the statute's terms.[5] The Court should not adopt the FCC's interpretation where, as here, it conflicts with the statutory text.[6] Plaintiff's

---

[5] *See Ins. Mktg. Coal.*, 127 F.4th at 317–18 (holding that the FCC "impermissibly exceeded its statutory authority" by defining a statutory term to impose additional requirements).

[6] *See Conrad*, 2026 WL 2741623, at *13 (declining to give the FCC's regulations "the weight needed to overcome the court's conclusion about § 227(c)(5)'s plain meaning").

"quarrel is with Congress," which has not amended section 227(c)(5) to encompass cell phone users. *Conrad*, 2026 WL 2741623, at *13.

**C. Plaintiff's allegations establish that she is a cellular subscriber, which ends the inquiry.**

Plaintiff claims she "plausibly alleges that she is a residential telephone subscriber," Opp. at 22, but the Complaint confirms that Plaintiff has no landline and maintains her number through a personal T-Mobile cellular plan. Doc. 1 ¶¶ 22–26. Those facts are dispositive: a subscriber to cellular telephone service is not a "residential telephone subscriber," however she uses the phone.[7] Because no amendment to the Complaint can turn a cellular subscription into a residential one, Count I should be dismissed with prejudice.

## III. Plaintiff alleges, at most, one telephone solicitation.

The parties agree that a "telephone solicitation" turns on "the call's purpose." Opp. at 22. But the Complaint alleges no facts showing that the July 23 and July 27 calls were initiated "for the purpose of encouraging the purchase" of goods or services. 47 U.S.C. § 227(a)(4); O.C.G.A. § 46-5-27(b)(3). Both calls were silent; no one identified a business or mentioned a product on either. Doc. 1 ¶¶ 29–30, 35–38.

[7] *See Koeller*, 2026 WL 2935851, at *4 (dismissing TCPA claim because plaintiff "allege[d] only that [the defendant] called him on his cell phone").

Plaintiff tries to supply the missing purpose through her own outbound calls. *Id.* ¶¶ 43–44, 51–52. Plaintiff argues she "does not sue on her callbacks; she sues on the three calls she received, and she alleges the callbacks to show what those calls were for." Opp. at 23. But Plaintiff does, in fact, "sue on her callbacks." Without those outbound calls, Plaintiff would have no way to supply purpose to two out of the three calls she alleges.[8]

Plaintiff argues that Esurance "cites no decision holding that a call placed to sell something stops being a solicitation because the line went silent after the consumer answered," Opp. at 22. But Esurance does not need authority to establish that silence is not solicitation. It is Plaintiff's burden to allege she received solicitation calls. Because Plaintiff alleges, at most, one telephone solicitation, she cannot satisfy the "more than one" requirement of either the TCPA or the GTSA.

**CONCLUSION**

The Court should grant Esurance's motion and dismiss Plaintiff's Complaint with prejudice.

[8] *See Schulz v. Infogroup, Inc.*, No. 3:19-CV-1620-N, 2020 WL 4201636, at *2 (N.D. Tex. July 21, 2020) (the TCPA "applies to calls initiated by defendants to residential telephone lines, not the inverse").

Respectfully submitted this 26th day of October, 2026.

*/s/ Jeffrey H. Fisher*
Jeffrey H. Fisher
GA Bar No. 981575
Jennifer L. Cotton
GA Bar No. 520708
jfisher@ktslaw.com
jcotton@ktslaw.com

**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528
Phone: (404) 815-6500
Fax: (404) 815-6555

*Counsel for Defendant Esurance Insurance Services, Inc.*

## CERTIFICATE OF FONT AND POINT SELECTION

I hereby certify that the foregoing was prepared in Times New Roman font, 14 point type, in compliance with Local Rule 5.1(C).

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I filed a copy of the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send notice of the filing to all parties of record.

Dated: October 26, 2026.

**KILPATRICK TOWNSEND**
**& STOCKTON LLP**
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528
Phone: (404) 815-6500
Fax: (404) 815-6555

*<u>/s/ Jeffrey H. Fisher</u>*
Jeffrey H. Fisher
GA Bar No. 981575
jfisher@ktslaw.com

*Counsel for Defendant Esurance Insurance Services, Inc.*